E-FILED
Thursday, 30 June, 2011  03:47:55 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| KYLE E. PITTENGER, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-4038 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## O P I N I O N  &  O R D E R

Before the Court is Petitioner Kyle E. Pittenger's Motion to Vacate, Set Aside, or Amend Sentence Pursuant to 28 U.S.C. § 2255 (R.2 Doc. 1), Respondent's Motion to Dismiss (R.2 Doc. 4), Petitioner's Response (R.2 Doc. 5), Petitioner's Motion to Expand the Record (R.2 Doc. 6), and Petitioner's Supplemental Reply (R.2 Doc. 8). For the following reasons, Petitioner's Motion to Vacate, Set Aside, or Amend Sentence is DENIED and Respondent's Motion to Dismiss is GRANTED.

### PROCEDURAL HISTORY[1]

On October 17, 2008, an Information was filed, charging Kyle E. Pittenger with Mail Fraud, in violation of 18 U.S.C. § 1341. (R.1 Doc. 1). According to the Information, Petitioner represented himself to be a financial advisor regarding insurance and investments and sold various investment vehicles and annuities. (R.1 Doc. 1 at 1). Petitioner received funds from clients which were to be invested in

---

[1] Reference documents from the case number 1:08-cr-40072 will be cited as ("R.1 Doc. __").
Reference documents from the case number 1:10-cv-4038 will be cited as ("R.2 Doc. __").

mutual funds, annuities, and other investment vehicles on behalf of his clients. (R.1 Doc. 1 at 2). From approximately May of 2004, and continuing through October of 2007, Petitioner defrauded several individuals and financial institutions. Petitioner induced his clients to sell one annuity and purchase another so that he may collect commissions and bonuses. (R.1 Doc. 1 at 3). Petitioner placed the funds his clients provided him into accounts that were held and controlled by him instead of accounts that were held and controlled by his clients. (R.1 Doc. 1 at 3). Petitioner provided his clients with false financial statements purporting to show that their funds were invested as they had directed Petitioner to invest them, when in fact Petitioner had taken those funds and converted them to his own personal use. (Doc. 1 at 4). Petitioner made false statements regarding one of his client's accounts to a bank in East Moline, Illinois and caused the bank to issue a cashier's check drawn on the client's account. (Doc. 1 at 4). Petitioner obtained the check from the bank, altered it, and deposited the check into his own brokerage account and invested it for his own benefit. (R.1 Doc. 1 at 4). Four individuals, one couple and two separate individuals, fell victim to Petitioner's scheme. (R.1 Doc. 1 at 2). Petitioner used the United States Postal Service, the United States Parcel Service, and Airborne Express to send at least fourteen letters in defrauding his clients. (R.1 Doc. 1 at 8).

On October 21, 2008, Petitioner executed a Waiver of Indictment before this Court. (R.1 Doc. 2). In the Waiver, Petitioner acknowledged that he had been advised of the nature of the charges, the proposed Information and his rights; waived prosecution by indictment in open court; and consented that the proceedings

against him could be made by Information rather than indictment. (R.1 Doc. 2). That same day, Petitioner pled guilty to the Information at a change of plea hearing pursuant to a written Plea Agreement. (R.1 Doc. 29). Petitioner agreed to waive the right to appeal and/or collaterally attack his conviction and/or sentence in the Plea Agreement. (R.1 Doc. 3 ¶ 9-10). Petitioner acknowledged that he had read the Plea Agreement, discussed it with his attorney, understood the Agreement and agreed to it voluntarily and of his own free will. (R.1 Doc. 3 ¶ 24). Petitioner further agreed that the facts about his criminal conduct were true and that he is guilty. (R.1 Doc 3 ¶ 24). Petitioner acknowledged that no threats, promises or commitments were made to influence him to plead guilty other than those stated in the Plea Agreement. (R.1 Doc. 3 ¶ 24). Petitioner further acknowledged that he was satisfied with his legal services and that by signing the statement he agreed everything was true and accepted the Plea Agreement. (R.1 Doc. 3 ¶ 24).

This Court held a sentencing hearing on November 24, 2009. This Court found a total offense level of 28, a criminal history category of II, and an advisory imprisonment range of 87 to 108 months. (R.1 Doc. 28 at 5). Petitioner was sentenced to 87 months of imprisonment with five years of supervised release and ordered to pay a $100.00 special assessment, and restitution in the amount of $473,052.28. This Court's judgment was entered on December 2, 2009. (R.1 Doc. 21). No direct appeal was filed. (R.2 Doc. 4 at 3).

On April 15, 2010, Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (R.2 Doc. 1). In his § 2255 Motion,

Petitioner claims that: 1) his sentence was in violation of the Sixth Amendment because the sentencing Court relied upon conduct not admitted to by Petitioner; 2) his counsel was ineffective because the restitution ordered is erroneously calculated; 3) his counsel was ineffective for failing to request a Kastigar hearing prior to advising him to plead guilty, and that prosecutors used information from a June 25, 2008, interview to charge him; 4) Petitioner's rights were violated because he was not indicted by a grand jury and did not enter a knowing guilty plea; 5) his counsel was ineffective for telling Petitioner to plead guilty; 6) his counsel was ineffective for failing to adequately consult with Petitioner regarding which elements would constitute a violation of 18 U.S.C. § 1341; 7) the Government's evidence against him was both insufficient and illegally obtained; 8) his counsel failed to discuss or file a notice of appeal; 9) his counsel was ineffective for failing to object to the allegations contained in the Information, and whether the matters contained therein were provided pursuant to Petitioner's cooperation agreement; 10) his counsel was ineffective in abandoning Petitioner's objections to the Presentence Investigation Report; 11) his counsel was ineffective for failing to argue the "rule of lenity;" and 12) his counsel was ineffective for failing to raise certain issues on direct appeal: illegal sentence, prosecutor misconduct, actual innocence, insufficient evidence and breach of the cooperation agreement and plea. (R2. Doc. 1 at 7-37). Respondent filed its Motion to Dismiss on May 13, 2010, stating that Petitioner's Plea Agreement bars Petitioner from attacking his conviction and/or sentence because he knowingly, freely, and voluntarily waived that right. (R.2 Doc. 3 at 4).

# DISCUSSION

Section 2255(a) of Chapter 28 of the United States Code provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a).

## I. The Plea Agreement

In the case at bar, the parties entered into a written plea agreement pursuant to FED. R. CRIM. P. 11. By its terms, this Plea Agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, agreements between the parties, including plea agreements. (R.1 Doc. 3 ¶1). No other agreement, understanding, promise, or condition between the United States Attorney for the Central District of Illinois and Petitioner exists, except as set forth in this Plea Agreement. (R.1 Doc. 3 ¶1). The Plea Agreement also states that "[Petitioner] fully understands the nature and elements of the crime for which [Petitioner] is pleading guilty." (R.1 Doc. 3 ¶5). Further, paragraph 5 lays out what the United States must prove beyond a reasonable doubt to convict Petitioner.

Respondent contends that Petitioner's § 2255 Petition should be dismissed because Petitioner knowingly, freely, and voluntarily waived his right to attack his

conviction and/or sentence, both in the Plea Agreement and in open court at the change of plea hearing. (R.2 Doc. 4 at 4). The Plea Agreement specifically states that "Understanding those rights, and having thoroughly discussed those rights with the [Petitioner's] attorney, [Petitioner] knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and conviction and to the sentence..." (R.1 Doc. 3 ¶9). Petitioner further waived his right to collaterally attack his conviction and/or sentence due to "ineffective assistance from his attorney; that the court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack." (R.1 Doc. 3 ¶10). Finally, the Agreement states that Petitioner has read the entire Plea Agreement, discussed it with his attorney, understands the Plea Agreement, and agrees to it voluntarily and of his own free will. (R.1 Doc 3 ¶24). Petitioner also states that "no threats, promises, or commitments have been made by anyone else...to influence him to plead guilty and that he was in fact satisfied with his attorney." (R.1 Doc. 3 ¶24).

Further, Petitioner acknowledges in the Plea Agreement that if he violates its terms the United States has the option to declare it null and void. (R.1 Doc. 3 ¶19). If the United States declares the Plea Agreement null and void, the United States will be completely released from all of its obligations under this Plea Agreement and will be free to seek to vacate Petitioner's conviction and/or sentence, and to reinstate any previously dismissed charges against Petitioner or to seek the Petitioner's resentencing. (R.1 Doc. 3 ¶19). Petitioner also waived any and all

6

double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against Petitioner or seek to have the Petitioner resentenced. (R.1 Doc. 3 ¶19).

Waivers, such as those agreed to by Petitioner in this case, are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1998). A waiver is enforceable if it is "knowing and voluntary and if the Petitioner cannot establish a claim of ineffective assistance of counsel in connection with the negotiating the agreement." *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000).

Accordingly, in order to determine whether Petitioner's § 2255 Petition is barred by his Plea Agreement, this Court need only to determine whether Petitioner's counsel was ineffective in its negotiation such that it is rendered void.

## II. Ineffective Assistance of Counsel

Petitioner makes the following allegations regarding ineffective assistance of counsel: 1) counsel was ineffective in failing to request a *Kastigar* hearing because the Plea Agreement contained conduct that was excluded under immunity; 2) counsel did not spend adequate time preparing him to make a knowing plea and the Court failed to inform Petitioner of the nature and elements of the charge to which he pled to; 3) counsel abandoned all sentencing objections resulting in Petitioner receiving a longer sentence than expected; and 4) counsel did not consult with Petitioner about appealing.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), set forth a two prong test to determine if counsel was ineffective. Under the first prong, the Court must seek to determine if counsel's performance was deficient; under the second, the Court considers whether the deficient performance prejudiced the Petitioner. *Id.* at 687. To prove counsel was deficient the Petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. In evaluating counsel's representation, the Court must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Hamilton v. United States*, 2010 WL 5125893 (C.D. Ill. Dec. 9, 2010). To establish prejudice, the Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The object of an ineffectiveness claim is not to grade counsel's performance. *Id.* at 697. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

### A. Failure to Request a *Kastigar* Hearing

Petitioner first argues that his counsel was ineffective because he failed to object to the fact that, in establishing the charges against him, the prosecution used information obtained from a cooperation agreement entered into prior to the Plea Agreement. (R.2 Doc. 5 at 2). Petitioner alleges that he met with prosecutors on June 25, 2008 and entered into a cooperation agreement at the time ("Cooperation Agreement"). (R.2 Doc. 1 at 18). According to the Cooperation Agreement, none of

the information provided at the interview could later be used against Petitioner. (R.2 Doc. 1 at 18). However, Petitioner claims that the Information later filed against him used evidence obtained at the meeting. (R.2 Doc. 1 at 18). According to Petitioner, his counsel failed to note this issue and seek a *Kastigar* hearing as to whether such evidence could be used. (R.2 Doc. 1 at 22-23). To obtain a *Kastigar* hearing, Petitioner must establish either 1) that during the plea negotiations he provided information to the Government in exchange for a prosecutorial promise not to use that information in proving additional charges against him; or 2) that he was compelled to testify after he invoked his privilege against self-incrimination. *U.S. v. Eliason*, 3 F.3d 1149, 1153 (7th Cir. 1993).

Petitioner refers to an agreement on June 25, 2008 in which the Government granted Petitioner conditional use immunity for statements made or information provided by Petitioner in his cooperation with the Government. (R.2 Doc. 1 at 44). The letter states that "no information provided pursuant to this agreement will be directly used as material evidence against your client in any federal criminal case, including sentencing." (R.2 Doc. 1 at 44). The letter further states, however, that Petitioner agrees "that any statement made or information provided pursuant to this agreement may be directly or indirectly used to obtain leads to other evidence, which evidence may be used against him in any criminal, civil, forfeiture, or administrative hearing, trial or other proceeding, including the sentencing hearing." (R.2 Doc. 1 at 44). This provision was intended by the Government and Petitioner to eliminate the need for a *Kastigar* hearing. (R.2 Doc. 1 at 44).

9

The purpose of a *Kastigar* hearing is to determine whether the evidence used by the Government against Petitioner is "derived form a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460 (1972) (emphasis added). That is, the Government must prove not only that it did not use information provided by Petitioner against him directly, but also that it did not use such information to lead to other evidence, which is now being used against him. Accordingly, a *Kastigar* hearing is appropriate when Petitioner has been granted both use immunity and derivative-use immunity.[2] *Id.* at 453.

Here, the Cooperation Agreement specifically denied Petitioner derivative-use immunity. (R.2 Doc. 1 at 44). Accordingly, the Government was allowed to use information gathered via its discussion with Petitioner to lead to other evidence, which could be used against him. (R.2 Doc. 1 at 1). Petitioner has not pointed to any evidence in the Information which was taken directly from his statements to the Government,[3] and there are ample indications that such evidence was derived

---

[2] Use immunity grants immunity from the use of compelled testimony in a future prosecution against Petitioner; whereas derivative-use immunity grants immunity from information derived from the compelled testimony in a future prosecution against the witness.

[3] Petitioner attempts to support this allegation with an affidavit attached to his Motion to Expand the Record. (R.2 Doc. 6). Petitioner's Motion to Expand the Record pursuant to Rule 7(a) governing § 2255 proceedings is GRANTED. According to Rule 7(a), the types of materials that may be submitted are letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered part of the record. Because Plaintiff has submitted an Affidavit that bears upon his first allegation of ineffective assistance of counsel, the Court finds that it should be allowed into the record. However, Petitioner's own affidavit does not offer support for his allegation, but weakens his argument. In this affidavit (which was written by Petitioner and signed, with alterations, by his attorney), Petitioner includes language that his attorney did not advise him that his charges

from other sources.[4] Because the Cooperation Agreement did not provide Petitioner with derivative-use immunity, and there is no indication that any of the facts in the Information were taken directly from his statements, the Court cannot find that his attorney's decision not to seek a *Kastigar* hearing with respect to the evidence contained in the Information fell below the objective standard of reasonable professional assistance,[5] nor that any prejudice would have resulted if it did.

## B. Inadequate Preparation Prior to Plea Hearing

Second, Petitioner alleges that his counsel was ineffective because his trial counsel did not adequately spend time preparing him to make a knowing plea and therefore he was not informed of the nature and elements of the charge brought

---

of Mail Fraud were immune to prosecution and that his attorney did not realize the charge to which his client pled was covered by the Cooperation Agreement. (R.2 Doc. 6 Exhibit 1). However, Petitioner's attorney, David Triemer, crossed out these sections on the Affidavit. Deference is given to Petitioner's counsel so that the stricken portions of the Affidavit by counsel should be construed in favor of counsel.

[4] For instance, the Presentence Investigation Report indicates that Petitioner provided a written confession on January 8, 2008 (six months before the Cooperation Agreement was entered), in which he admitted that he took money to invest from his clients and used it for his own purposes. (R.1 Doc. 24). In addition, at the change of plea hearing, the Government indicated that it had witnesses available who would testify as to all of the evidence brought against Petitioner. (R.1 Doc. 29 at 19-26). Finally, there was a civil case brought against Petitioner in July of 2008, which resulted in a judgment being entered against Petitioner and in favor of two of his victims. (R.1 Doc. 28 at 26).

[5] The Plea Agreement states that it supersedes and replaces any and all prior formal and informal, written and oral, express and implied, agreements between the parties. (R.1 Doc. 3 ¶1). Accordingly, even if evidence was taken directly from Petitioner in violation of his Cooperation Agreement, counsel may have agreed to this provision and the inclusion of such evidence in exchange for Petitioner being charged with only one count of Mail Fraud. As "[e]very indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight," *United States. v. Gaglia*, 922 F.2d 413, 417-18 (7th Cir. 1991), the Court finds that even if evidence was taken directly from Petitioner's statements, his counsel would not have been unreasonable for failing to object and counseling Petitioner to agree to the Plea Agreement.

11

against him. (R.2 Doc. 5 at 2). However, the Plea Agreement itself explicitly states what the Government would be required to prove beyond a reasonable doubt to sustain the charge: 1) Petitioner knowingly devised or participated in a scheme to defraud his clients; 2) Petitioner did so knowingly and with the intent to defraud; and 3) for the purpose of carrying out the scheme or attempting to do so, Petitioner used or caused the use of the United States Mails or a private commercial interstate carrier to take place. (R.1 Doc. 3 at 3). Petitioner signed the Agreement which stated that he had read the charge to which he was pleading guilty, that his attorney had fully explained the charge to him, and that he fully understood the nature and elements of the crime to which he was pleading guilty. (R.1 Doc. 3 at 2).

Moreover, at the change of plea hearing this Court explained the nature and elements of the crime to Petitioner and Petitioner stated that he understood them. (R.1 Doc. 29 at 7-8). The representations made by a Petitioner at a Rule 11 hearing are accorded a "presumption of verity." *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000).[6] Therefore, Petitioner had the following opportunities to learn of the charges against him: 1) in a meeting with his attorney; 2) reading the Plea Agreement; and 3) appearing before this Court and going over the charges with this Court. At any of these times Petitioner could have objected to the charges brought against him and not entered the Plea Agreement. Petitioner has failed under the second prong of *Strickland* because, as the nature and elements of the charges against him were explicitly explained to Petitioner both in the Plea Agreement and

---

[6] A Rule 11 hearing is the same as the change of plea hearing.

12

by this Court, he cannot show but for counsel's alleged error of not adequately preparing Petitioner the result of the proceedings would have been different.

### C. Failure to Argue Objections at Sentencing[7]

The third allegation that Petitioner makes is that his counsel was ineffective because his counsel abandoned all sentencing objections resulting in Petitioner receiving a longer sentence than expected. (R.2 Doc. 5 at 5).[8] Petitioner states that his sentence was nearly three times the anticipated incarceration period that trial counsel explained to Petitioner. (R.2 Doc. 5 at 5). However, it is clear from the record that Petitioner's counsel at sentencing did not abandon Petitioner's sentencing objections. Not only did counsel submit a Sentencing Memorandum to the Court in which he raised various objections to the Presentence Investigation Report (R.1 Doc. 18),[9] he also argued his objections at the sentencing hearing. (R.1 Doc. 28 at 7-9). Petitioner's counsel objected to the two-level enhancement for sophisticated means utilized by Petitioner pursuant to 2B1.1(9) of the guideline (R.1 Doc. 28 at 7) and to a two-level upward adjustment for abuse of position of trust

---

[7] "The right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). While Petitioner's claims of ineffective assistance at sentencing and on direct appeal do not relate directly to the negotiation of the waiver, the Court considers them out of an abundance of caution.

[8] The Court notes that Petitioner's counsel at sentencing was different from his counsel at the time he entered into the Plea Agreement. (R.1 Text Order of 7/28/2009).

[9] The Court notes that Petitioner's counsel did withdraw previous objections made to the Presentence Investigation Report which had been filed by previous counsel, as none of the objections would affect the advisory guidelines range. (R.1 Doc. 18 at 4). The Court cannot find that this was unreasonable, especially in light of the fact that counsel argued for objections which he believed would impact the length of the sentence Petitioner would receive.

and/or that the victims of the Mail Fraud were vulnerable (R.1 Doc. 28 at 9). Despite counsel's objections, the Court found that there was no cause or basis to depart from the Court's finding as to the advisory guideline range. (R.1 Doc. 28 at 14). Petitioner cannot expect this Court to allow him to attack his sentence and claim his counsel was ineffective simply because his sentence was longer than expected. Petitioner has failed to show that counsel abandoned his sentencing objections and thus fell below an objective reasonable standard of assistance, as required under the first prong of the *Strickland* analysis.

### D. Failure to Discuss Appeal

Finally, Petitioner argues that his counsel was ineffective in failing to consult with Petitioner about appealing. (R.2 Doc. 5 at 6). Petitioner states that at no time before or after sentencing did counsel consult with him about appealing the case, despite the fact that Petitioner was frustrated with the sentence imposed. (R.2 Doc. 5 at 6). However, Petitioner signed the Plea Agreement which waived his right to appeal and stated that he had fully discussed with his attorney and understood those rights. In addition, during the change of plea hearing, Petitioner stated that he had discussed the rights with his attorney, that he understood them, and that he was voluntarily and knowingly waiving them. (R.1 Doc. 29 at 13). As stated previously, the representations made by a Petitioner at a Rule 11 hearing are accorded a "presumption of verity." *Pike*, 211 F.3d at 389. Petitioner contradicts his own allegation that his attorney had not discussed his rights with him. Because no evidence suggests that counsel did not discuss Petitioner's rights to him, this

14

allegation fails under the first prong of *Strickland*. If counsel did not discuss Petitioner's right to appeal after sentencing, it was not unreasonable for him to not do so because Petitioner waived those rights after signing the Plea Agreement. Once Petitioner signed the Plea Agreement he no longer had the right to appeal.

Petitioner has shown nothing but bare allegations that his counsel was ineffective. He has no support from affidavits or evidence to show that his counsel was ineffective. Petitioner is contradicted by his own testimony in the change of plea hearing before this Court and his signing the initial Plea Agreement. Because Petitioner cannot satisfy either of the prongs under *Strickland* to show his counsel was ineffective, he cannot attack his Plea Agreement, and the Plea Agreement is enforceable.[10]

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a petitioner may only appeal from the court's judgment in his habeas corpus case if he obtains a certificate of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

[10] Petitioner has requested an evidentiary hearing, however, this request is denied. He is entitled to an evidentiary hearing only if he has alleged facts that, if proven, would entitle him to relief. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). As the factual issues relevant to Petitioner's claims in this action can be resolved on the record, an evidentiary hearing is not required. *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992).

As the Supreme Court held, for a petitioner to make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. FED. R. APP. PROC. 22(b)(1).

Based on the record before it, the Court cannot find that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The Court found that the written Plea Agreement, entered into by Petitioner pursuant to Fed. R. Crim. P. 11, was valid and enforceable. Therefore, Petitioner has waived his right to collaterally attack his conviction and/or sentence. Also, if Petitioner could collaterally attack his conviction and/or sentence, Petitioner cannot prove that his counsel was ineffective. Petitioner cannot show that his counsel's representation fell below an objective standard or that but for counsel's unprofessional errors, the result of the proceeding would have been different as required by the Supreme Court in *Strickland*.[11]

---

[11] The Court notes that had Petitioner's counsel not arranged the Plea Agreement, Petitioner could have potentially been charged with up to fourteen counts of Mail Fraud. Accordingly, Petitioner's counsel may have been ineffective for not advising Petitioner to accept the negotiated Plea Agreement.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Expand the Record (R.2 Doc. 6) is GRANTED, Respondent's Motion to Dismiss (R.2 Doc. 4) is GRANTED, Petitioner's Motion to Vacate, Set Aside, or Amend Sentence Pursuant to 28 U.S.C. § 2255 (R.2 Doc. 1) is DISMISSED WITH PREJUDICE, and a certificate of appealability is DENIED. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 30th day of June, 2011.

                                                    s/ Joe B. McDade
                                                    JOE BILLY McDADE
                                       United States Senior District Judge